UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IN RE:<br><br>1563 28TH AVENUE,<br>SAN FRANCISCO, CA 94112. | Case No. 19-cv-01385-LB<br><br>**ORDER GRANTING INTERPLEADER PLAINTIFF'S MOTION FOR AN ORDER DEPOSITING SURPLUS PROCEEDS WITH COURT AND DISCHARGING PLAINTIFF, ADDRESSING PLAINTIFF'S MOTION FOR COST AND FEES, AND DENYING/OVERRULING CLAIMANT POORSINA'S MOTIONS/OBJECTIONS**<br><br>Re: ECF No. 34, 48–49, 51, 54, 58–59, 64–65, 69–70, 73–80, 84–85 |

## INTRODUCTION

This interpleader action arises from the foreclosure and sale of a piece of real property at 1563 28th Avenue, San Francisco, California 94122 ("Property"), previously owned by Ali Poorsina. Mr. Poorsina borrowed against the Property and went into default on his loan. Peak Foreclosure Services, Inc., foreclosed on the Property and sold it on September 7, 2017. After paying the foreclosing creditor, trustee's fees and expenses, and court costs, Peak Foreclosure was left with $273,331.73 in surplus proceeds ("Surplus Proceeds") available to potential claimants.

Six claimants make claims at issue here to the Surplus Proceeds. Mr. Poorsina claims the entirety of the Surplus Proceeds. An individual named Jeffrey B. Neustadt claims $87,642.88

(including principal and interest accrued as of October 17, 2019).[1] An individual named Jose Javier Gutierrez claims for $84,742.19 (including principal and interest accrued).[2] The United States claims $34,187.63 for outstanding tax liability.[3] The California Department of Tax and Fee Administration ("CDTFA") claims $11,434.64 as of March 1, 2019, plus additional interest since that date.[4] Mr. Poorsina's former attorney John E. Cowan claims 40% of any remaining Surplus Proceeds after all other claims are settled.[5]

Peak Foreclosure now moves for an order depositing the Surplus Proceeds with the court, discharging it of liability with respect to the Surplus Proceeds, and awarding it costs and attorney's fees of $9,371.33.[6] Mr. Poorsina opposes Peak Foreclosure's motion and filed a motion for summary judgment, arguing that all Surplus Proceeds should be awarded to him.[7] Mr. Poorsina has also submitted a number of filings opposing or objecting to Mr. Neustadt's claim,[8] Mr. Gutierrez's claim,[9] the CDTFA's claim,[10] and Mr. Cowan's claim.[11] None of the other parties objects to Peak Foreclosure's motion; the other parties previously attempted to stipulate to Peak

---

[1] Joint Case Mgmt. Statement – ECF No. 86 at 9. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*

[3] *Id.* All parties stipulated to allowing the United States's claim, and the court previously ordered the United States to be paid on its claim after the interpleader funds are deposited with the court. Stipulation and Order – ECF No. 47.

[4] Joint Case Mgmt. Statement – ECF No. 86 at 9.

[5] *Id.*

[6] Peak Foreclosure Mot. – ECF No. 58.

[7] Poorsina Mot. for Summary Judgment ("MSJ") – ECF No. 49; Poorsina Opp'n to Peak Foreclosure Mot. – ECF No. 84.

[8] Poorsina Filing re Neustadt – ECF No. 48 at 4–8; Poorsina Suppl. Filing re Neustadt – ECF No. 77.

[9] Poorsina Filing re Gutierrez – ECF No. 48 at 1–3, 9–15; Poorsina Suppl. Filing re Gutierrez – ECF No. 69; Poorsina 2d Suppl. Filing re Gutierrez – ECF No. 73.

[10] Poorsina Filing re CDTFA – ECF No. 70; Poorsina Suppl. Filing re CDTFA – ECF No. 79.

[11] Poorsina Filing re Cowan – ECF No. 51; Poorsina Suppl. Filing re Cowan – ECF No. 75.

1 Foreclosure's depositing the Surplus Proceeds with the court and being discharged, but Mr.

2 Poorsina refused to agree.[12]

The court held a hearing and now orders as follows. The court grants Peak Foreclosure's motion for an order depositing the Surplus Proceeds with the court and discharging it of liability with respect to the Surplus Proceeds. The court defers ruling on Peak Foreclosure's motion for costs and attorney's fees pending additional information. The court denies Mr. Poorsina's motions and objections opposing the other parties' claims.

## STATEMENT

### 1. Procedural History

On September 7, 2017, Peak Foreclosure sold the Property at a trustee's sale for $1,235,200.[13] $961,868.27 went to pay the foreclosure creditor and to pay for costs, leaving $273,331.73 in Surplus Proceeds.[14]

Peak Foreclosure issued a written notice of available Surplus Proceeds to all persons and entities with a recorded interest in the Property.[15] Peak Foreclosure received five claims: (1) from Ali Poorsina, who claimed the entirety of the Surplus Proceeds, (2) Jose Javier Gutierrez, for $39,000, (3) the City and County of San Francisco for $803.87, (4) Jeffrey B. Neustadt for $86,213.92, and (5) the CDTFA for $12,233.94.[16] In addition, Peak Foreclosure identified a 2006 junior lien of $37,000, a 2010 recorded abstract of judgment of approximately $8,000, a 2011 recorded abstract of judgment of approximately $8,000, a federal tax lien of $23,000, and several

---

[12] *See* Joint Stipulation (not fully executed) – ECF No. 59-1 at 23–29. Mr. Poorsina also did not participate in the filing of the parties' joint case-management statement, despite his requirement to jointly participate. Joint Case Mgmt. Statement – ECF No. 86 at 9; *see also* Poorsina Case Mgmt. Statement – ECF No. 89.

[13] Wilkinson Decl. – ECF No. 58-1 at 2 (¶ 3); Trustee's Deed – ECF No. 58-1 at 6.

[14] Wilkinson Decl. – ECF No. 58-1 at 2 (¶ 3); Trustee's Deed – ECF No. 58-1 at 6.

[15] Wilkinson Decl. – ECF No. 58-1 at 2–3 (¶ 4); Notices – ECF No. 58-1 at 9–22.

[16] Wilkinson Decl. – ECF No. 58-1 at 3 (¶ 5). These claims have since grown with accrued interest. *See* Joint Case Mgmt. Statement – ECF No. 86 at 9.

small county tax liens.[17] Peak Foreclosure was not able to establish a distribution schedule and therefore, on January 29, 2019, it filed an interpleader petition in California Superior Court in San Francisco County.[18]

On March 29, 2019, the United States, which was a claimant on the federal tax lien, removed the action to federal court.[19] On August 27, 2019, with the consent or non-opposition of all parties, the court granted the United States's motion for summary judgment with respect to its claim and ordered that, within 14 days of the date Peak Foreclosure deposits the Surplus Proceeds with the court, the clerk of the court will disburse $34,187.63 to the United States on its claim.[20]

On August 29, 2019, Peak Foreclosure circulated to all claimants a Joint Stipulation to Deposit Surplus Proceeds with the Court and Discharging Petitioner Peak Foreclosure Services, Inc.[21] All claimants other than Mr. Poorsina signed the stipulation.[22] Because Mr. Poorsina did not sign the stipulation, the stipulation did not go into effect.

**2. Claims**

The court lists below the claims currently at issue in decreasing order of size. The court does not express any opinion at this juncture on the merits of any claim or on any order of priority regarding of claims.

<u>Ali Poorsina:</u> Mr. Poorsina claims the entirety of the Surplus Proceeds.

<u>Jeffrey B. Neustadt:</u> Mr. Neustadt maintains that in 2006, a company called Big Bear Lake Developers LLC lent Mr. Poorsina $40,000, secured by a deed of trust on the Property.[23] In 2013,

---

[17] Wilkinson Decl. – ECF No. 58-1 at 4 (¶ 7).
[18] *Id.* (¶¶ 8–10).
[19] *Id.* (¶ 11).
[20] Stipulation and Order – ECF No. 47.
[21] Wilkinson Decl. – ECF No. 58-1 at 4 (¶ 14).
[22] *Id.*; Joint Stipulation (not fully executed) – ECF No. 59-1 at 23–29.
[23] Neustadt Cl. – ECF No. 54 at 5 (¶¶ 1–2); Note – ECF No. 54 at 8–10; Deed of Trust – ECF No. 54 at 12.

1  Big Bear Lake assigned the deed of trust to Mr. Neustadt.[24] Mr. Neustadt states that Mr. Poorsina is in default of the loan.[25] Mr. Neustadt currently claims **$87,642.88** (including principal and interest accrued as of October 17, 2019).[26]

Jose Javier Gutierrez: Mr. Gutierrez maintains that in 2012, Mr. Poorsina executed a straight promissory note promising to pay Mr. Gutierrez $39,000, with interest.[27] The note was secured by a deed of trust.[28] Mr. Gutierrez currently claims for **$84,742.19** (including principal and interest accrued).[29]

United States: As discussed above, on August 27, 2019, with the consent or non-opposition of all parties, the court granted the United States's motion for summary judgment with respect to its claim and ordered that, within 14 days of the date Peak Foreclosure deposits the Surplus Proceeds with the court, the clerk of the court will disburse **$34,187.63** to the United States on its claim.[30]

CDTFA: In November 2017, the CDTFA issued a notice of state tax lien to Mr. Poorsina for $10,827.66.[31] In April 2018, the CDTFA issued a billing and refund notice to Mr. Poorsina for outstanding liabilities of $11,055.90.[32] In February 2019, the CDTFA issued a certificate of delinquency for $11,434.64.[33] The CDTFA currently claims **$11,434.64** as of March 1, 2019, plus additional interest since that date.[34]

John E. Cowan: Mr. Cowan maintains that in January 2019, Mr. Poorsina entered into an attorney-client fee agreement that provides that if Mr. Poorsina terminates Mr. Cowan's services

---

[24] Neustadt Cl. – ECF No. 54 at 5 (¶ 3); Assignment of Deed of Trust – ECF No. 54 at 14.
[25] Neustadt Cl. – ECF No. 54 at 5 (¶ 4).
[26] Joint Case Mgmt. Statement – ECF No. 86 at 9.
[27] Note – ECF No. 65-3 at 2.
[28] Deed of Trust – ECF No. 65-3 at 1.
[29] Joint Case Mgmt. Statement – ECF No. 86 at 9.
[30] Stipulation and Order – ECF No. 47.
[31] Notice of State Tax Lien – ECF No. 70 at 13.
[32] Billing and Refund Notice – ECF No. 70 at 14.
[33] Certificate of Delinquency – ECF No. 70 at 20.
[34] Joint Case Mgmt. Statement – ECF No. 86 at 9.

before the resolution of the case, Mr. Cowan will hold a lien for his attorney's fees for 40% of Mr. Poorsina's recovery.[35] Mr. Cowan maintains that Mr. Poorsina terminated Mr. Cowan's services in July 2019 by filing a substitution of attorney substituting himself in propria persona.[36] Mr. Cowan states that the substitution of attorney did not include Mr. Cowan's signature.[37] Mr. Cowan currently claims **40% of any remaining Surplus Proceeds** after all other claims are settled.[38]

**ANALYSIS**

"'An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for a rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund.'" *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (quoting *Mack v. Kuckenmeister*, 619 F.3d 1010, 1023 (9th Cir. 2010)). In the second stage, "'[i]f the district court finds that the interpleader action has been properly brought[,] the district court will then make a determination of the respective rights of the claimants.'" *Id.* (quoting *Mack*, 619 F.3d at 1023–24).

**1. Depositing the Interpleader Fund and Discharging the Interpleader Plaintiff**

**1.1 Governing Law**

"Federal Rule of Civil Procedure 67 . . . provides the mechanism for depositing the disputed property with the Court" in an interpleader case. *Methven and Assocs. v. Paradies-Stroud*, No. C 13-01079 JSW, 2014 WL 231654, at *2 (N.D. Cal. Jan. 21, 2014). Rule 67 states, in relevant part:

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party — on notice to every other party and by leave of court — may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

---

[35] Cowan Notice – ECF No. 34 at 1–2 (¶¶ 1–2).

[36] *Id.* at 1 (¶ 1).

[37] *Id.*

[38] Joint Case Mgmt. Statement – ECF No. 86 at 9.

"Rule 67 enables a party to be relieved of responsibility for a disputed fund, while the parties litigate ownership of the fund." *Methven*, 2014 WL 231654, at *2 (citing *Qwest Corp. v. City of Portland*, 204 F.R.D. 468, 470 (D. Or. 2001)). "The question of whether or not to grant a Rule 67 motion is a matter committed to the Court's discretion." *Id.* (citing *Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1475 (5th Cir. 1987), *modified on other grounds*, 831 F.2d 557 (5th Cir. 1987)).

A court may discharge an interpleader plaintiff from further liability after it deposits the disputed property with the court and where it has no interest in the disputed property or how claimants might want to divide the disputed property. 28 U.S.C. § 2361; *see Am. Gen. Life Ins. Co. v. Hart*, No. 16-CV-03904-LB, 2017 WL 1370721, at *2 (N.D. Cal. Apr. 7, 2017) ("'Pursuant to 28 U.S.C. § 2361, the Court is empowered to discharge a plaintiff from further liability in any civil interpleader action.'") (citing cases); *Sun Life Assur. Co. of Can. v. Estate of Chan*, No. C-03-2205 SC, 2003 WL 22227881, at *2 (N.D. Cal. Sept. 22, 2003) (" If an interpleading plaintiff has no interest in the stake he should be dismissed.'") (quoting *Metro. Life Ins. Co. v. Foley*, No. CIV.A. 02-1479, 2002 WL 31399787, at *4 (E.D. La. Oct. 23, 2002)).

"'[C]ourts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action.'" *Sun Life*, 2003 WL 22227881, at *3 (quoting *Abex Corp. v. Ski's Enters., Inc.*, 748 F.2d 513, 516 (9th Cir. 1984)). "The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court." *Trs. of Directors Guild of Am.-Producer Pension Benefit Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000). "[T]he availability of attorneys' fees for interpleader plaintiffs recognizes that by bringing the action, the plaintiff benefits all parties 'by promoting early litigation on the ownership of the fund, thus preventing dissipation.'" *Id.* (quoting *Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 193 (9th Cir. 1962)). "Because the interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund, attorneys' fee awards are properly limited to those fees that are incurred in filing the action and pursuing the plan's release from liability, *not* in litigating the merits of the adverse claimants' positions." *Id.* (emphasis in original) (citing *Schirmer Stevedoring*, 306 F.2d at 194). "Compensable expenses include, for example, preparing the

1  complaint, obtaining service of process on the claimants to the fund, and preparing an order

2  discharging the plaintiff from liability and dismissing it from the action." *Id.* at 426–27 (citing

3  *Schirmer Stevedoring*, 306 F.2d at 194; 7 Charles Alan Wright, Arthur R. Miller & Mary Kane,

4  Federal Practice & Procedure § 1719 & n.20 (1986)). "Because the scope of compensable

5  expenses is limited, attorneys' fee awards to the 'disinterested' interpleader plaintiff are typically

6  modest." *Id.* at 427 (citing cases). "Moreover, because the attorneys' fees are paid from the

7  interpleaded fund itself, there is an important policy interest in seeing that the fee award does not

8  deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Id.* "The

9  burden of establishing entitlement to an attorneys' fees award lies solely with the claimant." *Id.*

10 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "'Plaintiff's counsel is not required to

11 record in great detail how each minute of his time was expended. But at least counsel should

12 identify the general subject matter of his time expenditures.'" *Id.* (internal ellipsis omitted)

13 (quoting *Hensley*, 461 U.S. at 437 n.12). "Where the documentation is inadequate, the district

14 court is free to reduce an applicant's fee award accordingly." *Id.* (citing *Hensley*, 461 U.S. at 433).

### 1.2 Application

The Surplus Proceeds are subject to multiple competing claims. Peak Foreclosure made its request to deposit the Surplus Proceeds with the court on notice to all claimants. Peak Foreclosure's request to deposit the Surplus Proceeds with the court is proper, and the court grants it. *Cf., e.g.*, *Methven*, 2014 WL 231654, at *2. Mr. Poorsina argues that the Surplus Proceeds should be paid directly to him.[39] This is an issue for the second stage of the interpleader action (where the court will make a determination on the respective rights of the claimants), not an issue here at the first stage (where the court is determining only where the Surplus Proceeds will be held while this interpleader action proceeds). *Cf. Mack*, 619 F.3d at 1024 ("interpleader is not dependent on the merit of the defendants' claims"); *Methven*, 2014 WL 231654, at *2 (granting interpleader plaintiff's motion to deposit property with court and overruling defendant's opposition because "Defendant's opposition goes more towards the merits of the stakeholders'

---

[39] *See, e.g.*, Poorsina MSJ – ECF No. 49 at 6.

rights to the property, as opposed to whether the requirements for the statutory interpleader action have been met").

Similarly, Peak Foreclosure's request as a disinterested interpleader plaintiff to be discharged from liability with respect to the Surplus Funds is proper, and the court grants it. *Cf., e.g.*, *Am. Gen.*, 2017 WL 1370721, at *2 (discharging interpleader plaintiff with respect to interpleader funds after it deposits the funds with the court); *Sun Life*, 2003 WL 22227881, at *2 (same).

The court defers ruling on Peak Foreclosure's request for costs and attorney's fees. Peak Foreclosure states that it has expended $9,371.33 in costs and attorney's fees but does not explain how it incurred those fees or what they were for.[40] As the Ninth Circuit stated, "at least counsel should identify the general subject matter of his time expenditures." *Tise*, 234 F.3d at 427. Within one week from the date of this order, Peak Foreclosure may submit a new declaration explaining the basis of its costs and attorney's fees claim and explaining why its claim is reasonable.

### 2. Determining the Respective Rights of the Claimants

#### 2.1 Governing Law

"The second stage [of an interpleader action] involves the determination of the respective rights of the claimants[.]" *Lincoln Nat'l Life Ins. Co. v. Graham*, No. 2:12-cv-2177-SVW-RZ, 2013 WL 12132047, at *3 (C.D. Cal. Jan. 3, 2013). "Absent special circumstances, the second phase 'proceeds like any other action. Accordingly, when there is no genuine issue of material fact that justifies continuing to trial, the second stage may be adjudicated on a summary judgment motion. [O]therwise, the dispute will be tried[.]'" *Id.* (internal brackets and ellipsis omitted) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kane, Federal Practice & Procedure § 1714 (3d ed. 2001)).

---

[40] *See* Wilkinson Decl. – ECF No. 58-1 at 5 (¶¶ 17–18).

ORDER – No. 19-cv-01385-LB 9

**2.2 Application**

Mr. Poorsina moves for summary judgment to have all of the Surplus Proceeds paid to him, plus an additional award of attorney's fees of $37,808.40.[41] The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). Mr. Poorsina has not met his burden of showing that there is an absence of material fact with respect to whether he is entitled to all of the Surplus Proceeds or that he is entitled to an award of attorney's fees. The court denies Mr. Poorsina's motion.

Mr. Poorsina also objects to each of Mr. Neustadt's, Mr. Gutierrez's, the CDTFA's, and Mr. Cowan's claims to portions of the Surplus Proceeds and asks that their claims be removed or denied. Mr. Poorsina cites no basis for the court's summarily removing or denying the other claimants' claims. *Cf. Lincoln Nat'l*, 2013 WL 12132047, at *3 (second phase of interpleader action proceeds like any other action, i.e., through summary judgment or trial). To the extent that the court were to construe Mr. Poorsina's filings as summary-judgment motions, Mr. Poorsina has not met his burden of showing that there is an absence of material fact with respect to whether the other claimants have valid claims to any portion of the Surplus Proceeds.[42]

---

[41] Poorsina MSJ – ECF No. 49 at 1–2, 5–6.

[42] With respect to Mr. Neustadt, Mr. Poorsina argues (broadly speaking) that Mr. Neustadt fails to establish that he has possession of the original promissory note made out to Big Bear Lake and that Mr. Neustadt did not properly record the note, *see* Poorsina Filing re Neustadt – ECF No. 48 at 6, which Mr. Neustadt disputes, Neustadt Cl. – ECF No. 54 at 5 (¶¶ 1–2). With respect to Mr. Gutierrez, Mr. Poorsina argues (broadly speaking) that his signature on the promissory note to Mr. Gutierrez was forged and thus the note is unenforceable, Poorsina Filing re Gutierrez – ECF No. 48 at 9 (¶ 3), which Mr. Gutierrez disputes by pointing out that Mr. Poorsina's signatures on both the note and deed of trust were notarized, Hartney Decl. – ECF No. 65-1 at 2 (¶ 4). (Mr. Gutierrez filed on the docket a copy of the deed of trust showing its notarization, ECF No. 65-3 at 3, and his attorney attests that Mr.

## CONCLUSION

The court grants Peak Foreclosure's motion for an order depositing $273,331.73 in Surplus Proceeds with the court and discharging it of liability with respect to the Surplus Proceeds. The court defers ruling on Peak Foreclosure's motion for costs and attorney's fees and extends it one week to submit a new declaration explaining the basis of its costs and attorney's fees claim and why its claim is reasonable. The court denies Mr. Poorsina's motions and objections opposing the other parties' claims.

**IT IS SO ORDERED.**

Dated: October 17, 2019

LAUREL BEELER
United States Magistrate Judge

---

Gutierrez retains a copy of the original notarized note as well, Hartney Decl. – ECF No. 65-1 at 2 (¶ 4).) With respect to the CDTFA, Mr. Poorsina argues (broadly speaking) that the CDTFA's recovery should be limited to $1,275.00, *see* Poorsina Filing re CDTFA – ECF No. 70 at 2 — the amount he offered as a compromise of his tax liability — but he does not establish that the CDTFA's claim on the Surplus Proceeds is limited to what he might have offered as a compromise. With respect to Mr. Cowan, Mr. Poorsina states (broadly speaking) that Mr. Cowan did not provide him with adequate representation, *see* Poorsina Filing re Cowan – ECF No. 51 at 6, which Mr. Cowan disputes, Cowan Reply – ECF No. 64 at 2.