UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IN RE:<br><br>1563 28TH AVENUE<br>SAN FRANCISCO, CA 94112 | Case No. 19-cv-01385-LB<br><br>**ORDER GRANTING SUMMARY JUDGMENT TO JOSE JAVIER GUTIERREZ AND THE CALIFORNIA DEPARTMENT OF FEE AND TAX ADMINISTRATION, DENYING ALI PORSINA'S SUMMARY-JUDGMENT MOTIONS AGAINST THESE CLAIMANTS AND PEAK FORECLOSURE, AND CALLING FOR SUPPLEMENTAL BRIEFING FROM THE REMAINING CLAIMAINTS**<br><br>Re: ECF No. 118, 119, 122,123, 125, 132, 137, 143, 144, 151, 164, 166 |

**INTRODUCTION**

This interpleader action involves the distribution of surplus funds after the foreclosure sale of debtor Ali Poorsina's house at 1563 28th Avenue, San Francisco, California (the "Property").[1] The United States, a claimant on a tax lien, removed the case to federal court.[2] The court granted Peak's motion to deposit the surplus funds in the court's registry fund, and on October 20, 2019,

---

[1] Notice of Removal – ECF No. 1 at 1 (¶ 1); State Petition – ECF No. 1-1 at 3–5; Joint Case Mgmt. Statement – ECF 86 at 2–5. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Removal – ECF No. 1.

ORDER – No. 19-cv-01385-LB

Peak deposited $263,960.40.[3] Based on the parties' stipulation, the court disbursed $34,187.63 to the United States.[4] The remaining funds thus are $229,772.77. Four creditor-claimants filed a joint summary-judgment motion regarding their claims to the funds: Jose Javier Gutierrez, the California Department of Tax and Fee Administration ("CDFTA"), Jeffrey Neustadt, and John Cowan.[5] Mr. Poorsina, who is representing himself, filed summary-judgment motions against the claimants and Peak Foreclosure.[6]

The court grants summary judgment to (1) the CDTFA of $11,913.04 plus monthly interest of $43.47 (starting February 1, 2020) and (2) Mr. Gutierrez for $120,658 ($85,345 for the note (through February 15, 2020) and attorney's fees of $35,313), plus monthly interest on the note of $325. It grants partial summary judgment to Mr. Neustadt on Mr. Poorsina's challenge to the validity of his signature and the note. At the May 21, 2020 hearing, the court ordered supplemental briefing within 30 days (by June 29, 2020): (1) from Mr. Neustadt, on whether the current note is secured by a deed of trust, and, if it is not, the effect on his claim, and also, the total due on any secured note based on 10-percent interest, not the note's 18-percent interest; and (2) from Mr. Cowan, on the legal basis for (a) the court's jurisdiction over his fees, (b) his entitlement to fees (under the fee agreement and based on quantum meruit), and (c) the recovery of $5,000 for hours after Mr. Poorsina ended their legal relationship and began representing himself. Mr. Poorsina may respond to the supplemental briefing 14 days later (by July 13, 2020). The court denies Mr. Poorsina's summary-judgment motions against the CDFTA, Mr. Gutierrez, and Peak.

**STATEMENT**

Peak sold the Property at the foreclosure sale for $1,235,200.00, and — after paying $961,868.27 to the foreclosing creditor and other administrative and state-court costs — asked the

---

[3] Receipt – ECF No. 97.

[4] Orders – ECF No. 47, 94, 113; Peak's Notice of Deposit, ECF No. 98.

[5] Joint Mot. – ECF No. 132.

[6] Poorsina Mots. – ECF Nos. 118, 119, 122, 123, 125, 151, 164, 166.

ORDER – No. 19-cv-01385-LB                2

state court for an order discharging it of responsibility regarding the surplus funds.[7] The state court apparently issued the order.[8] The United States, a creditor on a tax lien, removed the case to federal court.[9] Peak asked the court to authorize (1) its deposit of the surplus funds into the court's registry fund, (2) its costs and attorney's fees, and (3) its discharge.[10] The court granted the order, discharged Peak, and authorized its costs and fees of $9,371.33.[11] Pace then deposited surplus funds totaling $263,960.40.[12] Pursuant to the parties' stipulation, the court disbursed $34,187.63 to the United States.[13] The surplus funds now are $229,772.77.

The remaining issue is the allocation of the surplus funds. The claimants are Mr. Poorsina's three creditors (the CDFTA and Messieurs Gutierrez and Neustadt), Mr. Poorsina (for any remaining funds), and Mr. Cowan (for his attorney's lien on Mr. Poorsina's funds). The following is a summary of the amounts that claimants seek.

<u>Jose Javier Gutierrez</u>: Mr. Gutierrez lent Mr. Poorsina $39,000 secured by a deed of trust on the Property, and he asks for $120,658: (1) $85,345 (principal and interest on the note as of February 15, 2020, based on 10-percent interest, with monthly interest thereafter of $325); and (2) $35,313 for attorney's fees (under the note's fees provision).[14]

<u>Jeffrey Neustadt</u>: Mr. Neustadt lent Mr. Poorsina $40,000 (possibly secured by a deed of trust on the Property, as discussed below), and he asks for $79,783.60 (principal and interest as of March 6, 2020 (based on accrued interest at an annual rate of 18 percent) plus monthly interest of $396.93 starting March 1, 2020.[15]

---

[7] State Petition – ECF No. 1-1 at 3–5.

[8] *See* Mot. – ECF No. 132 at 7.

[9] *See id*; Notice of Removal – ECF No. 1.

[10] Mot. – ECF No. 58.

[11] Orders – ECF Nos. 91, 94.

[12] Receipt – ECF No. 97.

[13] Orders – ECF No. 47, 94, 113; Peak's Notice of Deposit, ECF No. 98.

[14] Joint Mot. – ECF No. 132 at 2; Hartney Decl. – ECF No. 132-2 at 1 (attorney's fees); Toland Decl. – ECF No. 132-3 at 2 (principal and interest).

[15] Joint Mot. – ECF No. 132 at 2 ($79,783.60); Neustadt Decl. – ECF No. 132-7 at 2 (¶ 9).

CDTFA: in 2016, the CDTFA assessed an unpaid tax liability against Mr. Poorsina personally (for Mr. Poorsina's business Java Gourmet), he did not contest it, the amount was $11,464.64 on February 26, 2019, it was $11,913.04 on January 31, 2020 (including monthly interest under Cal. Rev. & Taxation Code § 6591), and the monthly interest thereafter is $43.47.[16]

John Cowan: Mr. Cowan is Mr. Poorsina's former counsel, represented him pursuant to a contingency-fee agreement regarding Mr. Poorsina's claim to any surplus funds, and claims 40 percent under that agreement of any recovery by Mr. Poorsina.[17]

The next sections summarize the claims and additional information about Peak.

### 1. Gutierrez Claim

Mr. Gutierrez met Mr. Poorsina around 1996 when they worked as limousine drivers for the same company.[18] In 2007, Mr. Gutierrez lent Mr. Poorsina $39,000 (secured by a deed of trust) to fund a construction project to convert the garage at the Property into a childcare business.[19] He gave Mr. Poorsina $7,000 in cash first, "with the understanding that the remaining amount would be provided to Mr. Poorsina when [they] signed the loan documents."[20] Then, on September 12, 2007, Mr. Gutierrez and Mr. Poorsina met at Fidelity National Title Company, an escrow agent there prepared the promissory note for $39,000 and the deed of trust and notarized the parties' signatures, and Mr. Gutierrez gave Mr. Poorsina a cashier's check (from First Republic Bank) for $32,000.[21] The parties submitted the note, the deed of trust, and three requests for a copy of any default by Mr. Poorsina (for three other deeds of trust that he executed), and Mr. Gutierrez

---

[16] Joint. Mot. – ECF No. 132 at 2; Safran Decl. – ECF No. 132-5 at 2–3 (¶ 6)

[17] Notice of Attorney Lien – ECF No. 34; Cowan Decl. – ECF No. 132-6 at 2 (¶¶ 2–3); Contingency Agreement, Ex. 1 to *id.* at 4–7.

[18] Gutierrez Decl. – ECF No. 132-1 at 1 (¶ 2).

[19] *Id.* at 1–2 (¶ 3).

[20] *Id.* (¶ 5).

[21] *Id.* (¶¶ 6–8).

submitted a September 2007 Fidelity "Borrower Closing Statement" with the loan history.[22] The note has Mr. Poorsina's signature, and the deed of trust has his notarized signature.[23]

The note (dated September 11, 2007) had the following terms: (1) the loan amount is $39,000; (2) the yearly interest rate is 12 percent, starting January 15, 2008; (3) monthly payments from February 15, 2008 to August 15, 2012; (4) the principal and accrued interest due on August 15, 2012; (5) yearly interest thereafter at 12 percent; and (6) a five-percent late charge for late payments.[24] The deed of trust securing the note and the three requests for copies of any default were recorded on September 14, 2007.[25] Mr. Poorsina made two payments in 2008 totaling $780 and never made additional payments.[26] The total principal and accrued interest (capped at ten percent, *see* Cal. Const. Art. XV, § 1) on February 15, 2020 was $85,345, with monthly interest thereafter of $325.[27] (Mr. Gutierrez does not ask for the five-percent late-payment penalty.) The note has an attorney's fees provision.[28] Mr. Gutierrez's lawyers documented their hourly rates, qualifications, hours billed and tasks ($335 for 17.8 hours and $875 for 33.6 hours) for fees totaling $35,313, and other hours that they do not claim, such as hours after filing the motion.[29] Mr. Poorsina initially contended that his signatures on the note and deed of trust were forged.[30] But he also apparently conceded the existence of the note and instead challenged its validity, in part on statute-of-limitations grounds and in part because it was not notarized.[31]

---

[22] *Id.* (¶¶ 9–10) & Exs. A–D; Ex. A–B, Poorsina 1/9/20 Mot. – ECF No. 119-1 at 1–10.

[23] Gutierrez Note, Ex. A to Gutierrez Decl. – ECF No. 132-1 at 5; Gutierrez Deed of Trust, Ex. B to *id.* at 8.

[24] Gutierrez Decl. – ECF No. 132-1 at 3 (¶ 11); Gutierrez Note, Ex. A to *id.* at 5.

[25] Gutierrez Deed of Trust, Ex. B to Gutierrez Decl. – ECF No. 132-1 at 7; Requests for Copy of Notice of Default, Ex. C to *id.* at 12–14.

[26] Gutierrez Decl. – ECF No. 132-1 at 3 (¶¶ 12–13).

[27] Toland Decl. – ECF No. 132-3 at 2 (¶¶ 3–7).

[28] Gutierrez Note, Ex. A. To Gutierrez Decl. – ECF No. 132-1 at 5.

[29] Hartney Decl. – ECF No. 132-2 at 1 (¶ 2); Hartney Supp. Decl. – ECF No. 162 at 1–3 (¶¶ 2–7).

[30] Poorsina 1/9/20 Mot. – ECF No. 119 at 2.

[31] *Id.*; Poorsina 5/4/20 Decl. – ECF No. 146 at 2–3.

### 2. Neustadt Claim

In 2006, Mr. Neustadt was a member of Big Bear Lake Developers LLC.[32] On March 1, 2006, Big Bear loaned Mr. Poorsina $37,000 at 18-perccent annual interest, memorialized in a note and secured by a deed of trust (with Mr. Poorsina's notarized signature) that was recorded on March 8, 2006.[33] Big Bear assigned the deed of trust to Mr. Neustadt on June 28, 2013.[34] The parties substituted a new note in October 2006 (signed by Mr. Poorsina on October 10, 2006) with the following terms: (1) the loan amount is $40,000; (2) the yearly interest rate is 18 percent; (3) the monthly principal-and-interest payments are $13,735.32; starting from November 10, 2006; (4) the remaining balance was due on January 10, 2007; and (4) the late charge for payment after the due date was five percent.[35] A provision in the note reflects that it is secured by a deed of trust, "dated the same day as this note," but the parties did not submit a deed of trust.[36] Mr. Poorsina defaulted on the note.[37] Mr. Neustadt calculated interest (at 18 percent) on the note and asks for $79,783.60 plus monthly interest from March 1, 2020 of $396.93.[38]

Mr. Poorsina initially contended that his signatures on March 2006 note and deed of trust were forged.[39] But he also apparently conceded the existence of the notes, the deed, and his signature ("[t]here is no genuine dispute that [he signed] the transfer in ownership for the Note"), and instead challenged their "validity" in part under the statute of limitations.[40] He submitted an addendum to the first note, the deed of trust and assignment for the first note, the second note, a

---

[32] Neustadt Decl. – ECF No. 132-7 at 2 (¶ 1).

[33] Mosk Decl. – ECF No. 132-4 at 2 (¶ 2) (describing note but not attaching it); Big Bear Deed of Trust, Ex. B to *id.* at 8–9; Interest-only Addendum to March 2006 Big Bear Note, Ex. B to Poorsina 1/9/20 Mot. – ECF No. 118-1 at 12–13.

[34] Big Bear Assignment, Ex. C to Mosk Decl. – ECF No. 132–4 at 18–19.

[35] Mosk Decl. – ECF No. 132-1 at 2 (¶ 4); October 2006 Big Bear Note, Ex. A to *id.* at 4–6.

[36] October 2006 Big Bear Note, Ex. A to *id.* at 5.

[37] Mosk Decl. – ECF No. 132-4 at 2 (¶ 5); *see also* Neustadt Decl. – ECF No. 132-7 at 2 (¶ 3).

[38] Joint Mot. – ECF No. 132 at 2; Proposed Order – ECF No. 158 at 2.

[39] Poorsina 1/9/20 Mot. – ECF No. 118 at 2–3; Poorsina 5/4/20 Decl.– ECF No. 146 at 3 (recounting the same facts).

[40] Poorsina 1/9/20 Mot. – ECF No. 118 at 2–3; Poorsina 5/4/20 Decl. – ECF No. 146 at 8–9.

ORDER – No. 19-cv-01385-LB                     6

March 2006 Fidelity statement reflecting the $37,000 loan, his July 2017 "rescission" of the March 2006 deed (for failure to comply with the Truth in Lending Act), Big Bear filings with the California Secretary of State, and Mr. Neustadt's letter with the 2017 loan balance.[41]

### 3. CDFTA Claim

Mr. Poorsina had a business called Java Gourmet, Corp.[42] It had unpaid tax liabilities of $6,521 for the tax period between July 1, 2012 to March 8, 2013.[43] On April 29, 2015, the CDFTA assessed the liability against Mr. Poorsina personally under Cal. Rev. & Tax. Code § 6829, he did not appeal the assessment, and it became final 30 days later.[44] As of January 31, 2020, the tax liability was $11,913.04, and starting February 1, 2020, monthly interest of $43.47 accrues.[45] The CDFTA recorded its tax lien on November 2, 2017.[46] On February 11, 2019, Mr. Poorsina made an offer of compromise to the CDFTA based on financial circumstances.[47] The CDFTA reported the offer as $1,275, but Mr. Poorsina's letter referenced $127.[48] The CDFTA rejected the offer and seeks the full tax assessment.[49] Mr. Poorsina wants the court to approve $1,275.[50]

---

[41] Big Bear Application, Ex. B to Poorsina 1/9/20 Mot. – ECF No. 118-1 at 13; Notice of Rescission, Ex. B to *id.* – ECF No. 118-1 at 16; Neustadt Letter, Ex. B to *id.* at 19.

[42] Safran Decl. – ECF No. 132-5 at 2 (¶ 3); Poorsina 2/11/19 Letter, Ex. A to Poorsina 1/14/20 Mot. – ECF No. 123-1 at 3; Seller's Permit, *id.* at 8.

[43] February 2019 Certificate of Delinquency, Ex. A to Safran Decl. – ECF No. 132-5 at 9; January 2020 Certificate of Delinquency, Ex. B to *id.* at 15.

[44] Safran Decl. – ECF No. 132-5 at 2 (¶ 3).

[45] *Id.* at 2–3 (¶ 6); January 2020 Certificate of Delinquency, Ex. B to *id.* at 15.

[46] Notice of Lien, Ex. A to *id.* at 6, 11.

[47] Poorsina 2/11/19 Letter, Ex A to Poorsina 1/14/20 Mot. – ECF No. 123-1 at 3.

[48] *Id.*; March 2019 Letter, Ex. C to Safran Decl. – ECF No. 132-5 at 17.

[49] March 2019 Letter, Ex. C to Safran Decl. – ECF No. 132-5 at 17; Safran Decl. – ECF No. 132-5 at 3 (¶ 7); Joint Mot. – ECF No. 132 at 10.

[50] Poorsina 5/4/20 Decl. – ECF No. 146 at 10.

### 4. Cowan Claim

On January 4, 2019, Mr. Poorsina hired attorney John Cowan to recover surplus funds following the foreclosure sale of the Property.[51] Their fee agreement is a 40-percent contingency agreement with an initial retainer of $3,500 payable as follows: $1,500 due January 4, 2019, $1,000 due 30 days later, and $1,000 due 60 days later.[52] The agreement provided for an hourly rate of $150, periodic statements detailing Mr. Cowan's hours and expenses, Mr. Poorsina's written notification (after a statement) with any disputes or questions (and a waiver of any challenges if he did not dispute the charges), and an attorney lien for any sums due.[53] Mr. Poorsina paid the first $1,500 but did not pay the additional retainer funds.[54] At Mr. Poorsina's request, Mr. Cowan continued to perform work under the contingency-fee arrangement.[55] On July 24, 2019, Mr. Poorsina filed a substitution of attorney and thereafter represented himself.[56] Mr. Cowan filed a Notice of Attorney's Lien for 40% of any funds recovered by Mr. Poorsina.[57]

Mr. Cowan submitted a signed copy of the agreement.[58] Mr. "Poorsina challenges the contract agreement . . . because it does not include a binding affirmed signature. . . ."[59] Mr. Poorsina also submitted correspondence from Mr. Cowan: (1) a June 21, 2019 letter about raising the contingency split from 40 percent to 55 percent (given Mr. Poorsina's unwillingness or inability to pay costs); (2) a June 29, 2019 letter (referencing earlier correspondence) about all claims and Peak Foreclosure; (3) a July 16, 2019 email reflecting the failure to pay the $2,000 and Mr. Cowan's resulting suggestion to increase the contingency split; and (4) an August 9, 2019 letter

---

[51] Cowan Decl. – ECF No. 132-6 at 2 (¶ 2); Contingency Agreement, Ex. 1 to *id.* at 4–7.

[52] Contingency Agreement, Ex. 1 to Cowan Decl. – ECF No. 132-6 at 4.

[53] *Id.* at 4–5.

[54] Cowan Decl. – ECF No. 132-6 at 2 (¶ 3).

[55] *Id.*

[56] Substitution of Attorney and Order – ECF No. 33.

[57] Notice of Attorney's Lien – ECF No. 34.

[58] Contingency Agreement, Ex. 1 to Cowan Decl. – ECF No. 132-6 at 7; Contingency Agreement, Ex. A to Poorsina 1/13/20 Mot. – ECF No. 122-1 at 1–5 (unsigned copy).

[59] Poorsina 5/4/20 Decl. – ECF No. 146 at 11.

ORDER – No. 19-cv-01385-LB         8

notifying Mr. Poorsina of the Notice of Tax lien.[60] Mr. Cowan documented his hours and hourly rate, paralegal work, and costs: (1) 34.2 attorney hours at $300 per hour for a total of $10,260; (2) 1.25 attorney hours at $150 per hour for a total of $187.50; (3) 15.6 hours of paralegal work at $100 per hour for a total of $1,560.00; and (4) costs of $559.[61] The total is $12,566.50.

### 5. Peak Foreclosure

Peak Foreclosure Services submitted the Trustee's Deed Upon Sale (recorded on September 15, 2017), the notice of available surplus funds, and its account of the claims.[62]

### 6. Relevant Procedural History and Jurisdiction

The United States removed the case to federal court, and the court disbursed funds to it.[63] The basis for the court's federal-question jurisdiction was the United States' claim. After resolving the federal tax claim, the court retained supplemental jurisdiction to address the remaining claims to the surplus funds.[64] Four claimants filed a joint summary-judgment motion regarding their claims to the surplus funds: the CDFTA and Messieurs Gutierrez, Neustadt, and Cowan.[65] Mr. Poorsina opposed the joint motion, moved for summary judgment motions against the individual claimants, and filed several summary-judgment motions against Peak for wrongful foreclosure.[66] The court held a hearing on May 21, 2020.[67] All parties consented to the court's jurisdiction.[68]

---

[60] Cowan Letters, Exs. A–B to Poorsina 1/13/20 Mot. – ECF No. 122-1 at 6–11.

[61] Billing Records, Ex. A to Cowan Supp. Decl. – ECF No. 163-1 at 7.

[62] Wilkinson Decl. – Ex. 137-1 at 2–5 (¶¶ 1–14); Trustee's Deed Upon Sale & Notice, Exs. 1–2 to Wilkinson Supp. Decl. – ECF Nos. 161-1 at 1–3, 161-2 at 1–14.

[63] Notice of Removal – ECF No. 1; Orders – ECF Nos. 47, 113.

[64] Supp. Brief – ECF No. 142; *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1016 (N.D. Cal. 2012) (supplemental jurisdiction for claims in a case pending for a year with rounds of briefing).

[65] Joint Mot. – ECF No. 132.

[66] Poorsina 5/4/20 Decl. – ECF No. 146; Poorsina Mots. – ECF Nos. 118–19, 122, 123, 125, 151, 164, 166.

[67] Minute Entry – ECF No. 165.

[68] Joint Case Mgmt. Statement – ECF No. 86 at 10; Poorsina Consent – ECF No. 53.

ORDER – No. 19-cv-01385-LB                 9

# GOVERNING LAW

## 1. Summary Judgment

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**2. Interpleader**

"'An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for a rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund.'" *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (quoting *Mack v. Kuckenmeister*, 619 F.3d 1010, 1023 (9th Cir. 2010)). In the second stage, "'[i]f the district court finds that the interpleader action has been properly brought[,] the district court will then make a determination of the respective rights of the claimants.'" *Id.* (quoting *Mack*, 619 F.3d at 1023–24). "Absent special circumstances, the second phase proceeds like any other action." *Lincoln Nat'l Life Ins. Co. v. Graham*, No. 12-cv-2177-SVW-RZ, 2013 WL 12132047, at *3 (C.D. Cal. Jan. 3, 2013) (cleaned up). "Accordingly, when there is no genuine issue of material fact that justifies continuing to trial, the second stage may be adjudicated on a summary judgment motion." *Id.*

## ANALYSIS

The issue in this lawsuit is the claimants' respective rights to the surplus funds. Preliminarily, to the extent that Mr. Poorsina challenges the court's discharge of Peak, he has not met the standard for reconsideration. N.D. Cal. Civ. L.R. 7-9(b); *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).[69] The remaining claimants are the CDFTA and Messieurs Gutierrez, Neustadt, and Cowan.

---

[69] Mots. – ECF No. 125, 151, 164, 166. In addressing the pending motions against Peak, the court considered Mr. Poorsina's submissions (despite their evidentiary deficiencies) and arguments.

### 1. CDFTA Claim

The CDFTA submitted the appropriate certificate of delinquency, which is prima facie evidence of it. Cal. Rev. & Tax Code § 6714; *id.* § 20 (CDFTA is the "board" under § 6714). Mr. Poorsina is personally liable for the assessment after the dissolution of his business. *Id.* § 6829. He did not challenge the assessment and instead asks the court to impose the compromise of $1,275.[70] The court cannot enjoin the collection of the lien. Cal. Const. art. XIII, § 32; Cal. Rev. & Tax Code § 6931; *Freeman v. Cal. Franchise Tax Bd.*, No. 18-cv-04501-CRB, 2019 WL 3412938, at *6 (N.D. Cal. July 29, 2019). The court grants summary judgment to the CDFTA for $11,913.04 plus monthly interest (beginning on February 1, 2020) of $43.47.[71]

### 2. Gutierrez Claim

Preliminarily, Mr. Poorsina challenged the validity of his signature and the enforceability of the note. His signature on the loan note is not notarized, but his signature on the deed of trust is. The notarized signature is prima facie evidence that the signature is genuine. *Transamerica Title Ins. Co. v. Green*, 11 Cal. App. 3d 693, 702 (1970) ("the purpose of the certificate of acknowledgment is to establish the identity of such person and the genuineness of the signature attached to the instrument . . . [and] the certificate is prima facie evidence of the truth of the facts stated therein") (citation omitted); *see* Fed. R. Evid. 902(8) (a document is self-authenticating if it is "accompanied by a certificate of acknowledgement that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments"). Mr. Poorsina submitted no competent evidence to defeat the court's conclusion as a matter of law that the parties executed a valid note and deed of trust. *See Devereaux*, 263 F.3d at 1076. His arguments — that the statute of limitations and the FDCPA bar this lawsuit — are unsupported by the authorities that he cites.

Moreover, the deed of trust secures the note and establishes a legally enforceable claim to the interpleader funds. "Proper execution and delivery of a deed of trust is a grant of an interest in real

---

[70] Poorsina 1/14/20 Mot. – ECF No. 123 at 4; Poorsina 5/4/20 Decl. – ECF No. 146 at 10.

[71] Safran Decl. – ECF No. 132-5 at 2–3 (¶ 6) & January 2020 Certificate of Delinquency, Ex. B to *id.* at 15.

1 property under California law; thus a deed of trust is a lien or charge upon the property which is
2 created upon delivery of the instrument." *In re Cortez*, 191 B.R. 174, 178 (B.A.P. 9th Cir. 1995)
3 (citing Cal. Civil Code § 1054) (cleaned up). "In California, the deed of trust is an instrument
4 providing security or collateral which must be perfected by recording to bind subsequent
5 purchasers . . . [t]he deed of trust is not perfected until it is recorded in the office of the County
6 Recorder" *Id.* (citing Cal. Civil Code §§ 1213, 1214).

In sum, Mr. Gutierrez is a secured creditor and can recover principal and interest (capped at 10 percent, *see* Cal. Const. art. XV, § 1) totaling $85,345 as of February 15, 2020 plus monthly interest thereafter of $325.[72]

The next issue is the award of fees under the note.[73] The court considers whether the fees are reasonable by reference to the lodestar cross-check (the number of hours reasonably spent by counsel multiplied by a reasonable hourly rate). C*havez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010). "[T]he lodestar is the basic fee for comparable legal services in the community." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citation omitted). "The reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). The fee request is reasonable.

First, the rates here — based on the declarations and the court's experience for lawyers of comparable experience doing comparable work — are reasonable. *Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015); *Ketchum*, 24 Cal. 4th at 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. Feb. 6, 2020). Second, the hours expended are reasonable, given the court's review of the time records, the declarations, and the court's experience with the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983); *Smith v. Payne*, No. C 12-01732 DMR, 2013 WL 1615850, at *1 (N.D. Cal. Apr. 15, 2013).

---

[72] Toland Decl. – ECF No. 132-3 at 2 (¶ 3) (conceding that the highest allowable interest rate is 10%).
[73] Gutierrez Note, Ex. A to Gutierrez Decl. – ECF No. 132-1 at 5.

The court considered whether it should reduce the fees based on counsel's coordinating the joint summary-judgment motion but does not reduce the fees for several reasons. The coordination was modest, and the parties contributed their independent pieces (shown by CFDCA's argument, the need for supplemental briefing from the other claimants, and the arguments at the hearing). Also, the hours in the fee request are fewer than those that counsel spent. Overall, the fee request is reasonable (by reference to the lodestar cross-check), related only to Mr. Gutierrez's claims, and recoverable under the fee provision in the note. And — as counsel pointed out at the hearing — the protracted nature of this dispute was unnecessary and contributed to the fees.

In sum, the court grants summary judgment for Mr. Gutierrez for $85,345 as of February 15, 2020, with monthly interest thereafter of $325, plus attorney's fees of $35,313.

### 3. Neustadt Claim

An issue is whether the operative note is secured by a deed of trust. The record shows only a deed of trust for the March 2006 original note, and while the October 2006 substituted note references a deed of trust "dated the same day as this note," Mr. Neustadt did not submit it.[74] At the hearing, the court ordered supplemental briefing on whether the current note is secured by a deed of trust, and, if it is not, the effect on the claim.

Assuming that a recorded deed of trust secures the note, the analysis in the last section applies here to Mr. Poorsina's challenge to his signature and the overall validity of the note. The court grants summary judgment to Mr. Neustadt on this issue. *See* Fed. R. Civ. P. 56(a) (a party may "move for summary judgment, identifying each claim or defense — or part of each claim or defense — on which summary judgment is sought"); *Powell v. City of San Jose*, No. 08-cv-01213-JW, 2009 WL 10702159, at *2 (N.D. Cal. Oct. 16, 2009) (Rule 56(a) allows summary judgment on all or part of a claim). The maximum interest rate is 10 percent, not the note's 18 percent. *see* Cal. Const. art. XV, § 1.

---

[74] October 2006 Big Bear Note, Ex. A to Mosk Decl. – ECF No. 132-4 at 4–6.

### 4. Cowan Claim

Mr. Cowan filed a lien for his fees. The contingency-fee contract permits him to do so. *Fletcher v. Davis*, 33 Cal. 4th 61, 66–67 (2004); *see Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 49–50 (2010). And the hourly rate and the hours expended are reasonable (based on the lodestar cross-check and the court's understanding of the relevant legal community and the hours spent in this litigation). But there are several legal issues that are not addressed in the briefing.

First, there is the issue of the court's jurisdiction to address the lien. There is no legal authority in the motion. The court exercised supplemental jurisdiction over the non-federal claimants' claims. The issue about entitlement to fees is different. Perhaps (as the court said at the hearing) there is ancillary jurisdiction to address related fee disputes. Still, the person seeking fees must establish his entitlement to them, not just through a lodestar analysis, but also, by citing the relevant legal standards. That did not happen here.

Second, Mr. Cowan must address — as a matter of law — why he is entitled to his fees (under the fee agreement and based on quantum meruit).

Third, the fee request apparently includes $5,000 for hours after Mr. Poorsina ended the legal relationship and began representing himself. Mr. Neustadt must explain his legal entitlement to the funds.

At the March 21, 2020 hearing, the court ordered supplemental briefing on these issues.

## CONCLUSION

The court grants summary judgment to (1) the CDTFA of $11,913.04 plus monthly interest of $43.47 (starting February 1, 2020) and (2) Mr. Gutierrez for $120,658 ($85,345 for the note (through February 15, 2020) and attorney's fees of $35,313), plus monthly interest on the note of $325. The CDTFA and Mr. Gutierrez must submit proposed judgments and proposed orders authorizing disbursement of the funds from the court's registry fund. The court grants partial summary judgment to Mr. Neustadt on Mr. Poorsina's challenge to the validity of his signature and the note. The court denies Mr. Poorsina's summary-judgment motions against the CDFTA,

Mr. Gutierrez, and Peak. Messieurs Neustadt and Cowan must submit their supplemental briefs by June 29, 2020, and Mr. Poorsina may respond (by July 13, 2020).

This disposes of ECF Nos. 118, 119, 122, 123, 125, 132, 137, 143, 144, 151, 164, and 166.

**IT IS SO ORDERED.**

Dated: May 27, 2020

_____
LAUREL BEELER
United States Magistrate Judge